IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2008

## CORNELIUS RICHMOND v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 00-06747, -06750, -06751, -06752     James C. Beasley, Jr., Judge**

**No. W2007-00580-CCA-R3-PC   -   Filed February 4, 2009**

The petitioner, Cornelius Richmond, appeals the Shelby County Criminal Court's denial of his
petition for post-conviction relief. On appeal, the petitioner argues that he received the ineffective
assistance of counsel which rendered his guilty pleas involuntary and unknowing. After reviewing
the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J.,
joined. THOMAS T. WOODALL, J., not participating.

Britton J. Allan, Memphis, Tennessee, for the appellant, Cornelius Richmond.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis and Jennifer L. Bledsoe,
Assistant Attorneys General; William L. Gibbons, District Attorney General; Patience Branham,
Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

        The record reflects that on December 7, 2004, the petitioner pled guilty to three counts of
robbery and one count of attempted robbery. The offenses occurred in October and November 1999
and involved the petitioner's taking or attempting to take purses from four different victims. In two
of the robberies, the petitioner sprayed the victim's face with mace before taking her purse, and in
the third robbery, the petitioner took the victim's purse after knocking her down and kicking her.
In the attempted robbery, the victim struggled with the petitioner over the purse and prevented him
from taking the purse. The trial court sentenced the petitioner to fifteen years in the Department of
Correction as a career offender, with the petitioner's sentences in the instant matter to run

concurrently with his sentences in a previous case.[1]

On December 5, 2005, the petitioner filed a pro se petition for post-conviction relief related to his guilty pleas. This petition followed the October 3, 2005 petition he had filed in connection with his previous convictions. The post-conviction court appointed counsel, and on June 2, 2006, the petitioner filed amended petitions in both cases. As relevant to this case, the petitioner asserted that he received the ineffective assistance of counsel and that counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary. On February 8, 2007, the post-conviction court held an evidentiary hearing concerning both petitions.[2]

At the evidentiary hearing, the petitioner testified that he retained trial counsel because counsel had extensive criminal law experience, including cases similar to the petitioner's. However, the petitioner said that counsel's performance did not meet his expectations. The petitioner said that trial counsel did "[n]o investigation" in the four years counsel represented him in the first case. The petitioner stated that counsel "never did [provide] the full discovery package," and that he never saw any witness statements other than one made by his former codefendant. The petitioner claimed that he had asked counsel to interview certain witnesses, including an alibi witness and a police officer who was present for his initial police interview, but that counsel never spoke with these witnesses. The petitioner also said that counsel failed to cooperate with the private investigator whom he had retained. Furthermore, the petitioner asserted that counsel visited him in the county jail only two or three times during the period of counsel's representation.

The petitioner testified that counsel filed "some good motions," including a motion to suppress his initial statement to police, but that these motions were denied. He said that he made numerous complaints regarding counsel to the trial court, this court, and the Board of Professional Responsibility, but that nothing came from these complaints. As relevant to the petitioner's guilty pleas which formed the basis of the instant matter, the petitioner testified that he had "no [other] option" than to plead guilty and avoid a longer sentence. The petitioner said, "I felt like that [during] the first trial [counsel] didn't do [any] preparation and I kn[e]w that I wasn't going to stand a chance on this next trial, so I felt the best thing for me to do was to take the plea bargain." The petitioner admitted that counsel did not force him to plead guilty.

On cross-examination, the petitioner admitted that he did give a statement to police in which he admitted to participating in the robberies. However, he denied "using the proceeds" from the robberies and denied being caught with anything from the stolen purses at the time of his arrest. The

---

[1]Prior to entering guilty pleas in the instant matter, following a jury trial in a separate case the petitioner was convicted of one count of robbery and three counts of forgery. On appeal, this court affirmed the petitioner's convictions and total sentence of thirty-three years as a career offender. See State v. Cornelius Richmond, No. W2003-00683-CCA-R3-CD, 2004 WL 385694 (Tenn. Crim. App. Mar. 1, 2004); perm. app denied, (Tenn. Oct. 4, 2004).

[2]While the post-conviction court considered both petitions at the evidentiary hearing, the petition regarding the jury trial is not at issue in this appeal. However, because counsel's representation in the petitioner's previous case is relevant to the issues raised by the petitioner in the instant matter, we will review the evidence related to the earlier conviction in this opinion.

petitioner said that although trial counsel filed several motions up to a year before trial, counsel "chose" not to argue the motions until the trial date. The petitioner said that he only received discovery for the two cases that went to trial, and in those cases he believed that he should have received more discovery than he actually received. The petitioner recalled that the offenses to which he pled guilty were originally set to be tried with the other offenses, but that the offenses to which he ultimately pled guilty were severed before trial.

On examination by the court, the petitioner said that his defenses at trial were sufficiency of the evidence and what he perceived to be defective indictments that "indicted me on the same cases, twice." He also said that his statements to police were coerced, which counsel argued unsuccessfully on direct appeal. The petitioner reiterated that he told counsel about his desire to call an alibi witness and one of the police officers from the original interrogation but that counsel called neither of these persons to testify. He also insisted that counsel never told him about the theory of criminal responsibility, under which he could have been convicted of forgery even if he did not actually forge the checks. The petitioner claimed that his codefendant used a stolen credit card to purchase several items but that he (the petitioner) never signed any credit card receipts and did not acquire any items purchased with the stolen card. The petitioner said that a surveillance video taken from a mall "would have shown I didn't have anything to do with the forgery," but counsel never showed him the video.

Counsel testified that he met with the petitioner "numerous times" before trial and that he discussed the petitioner's cases, particularly the offenses for which the petitioner was tried, during those meetings. Counsel said that he had not heard about the existence of an alibi witness or a private investigator until the instant evidentiary hearing; counsel said that had he heard about such witnesses before trial, he would have subpoenaed them.

Counsel said that he told the petitioner that he could only raise those issues that he deemed appropriate. Counsel said that "there just wasn't any real issue about the facts of this case," and therefore he focused on "raising the issues that [would] make the state prove [the petitioner] guilty beyond a reasonable doubt." Specifically, counsel said that he "raised the issue about who [the robbery victim had] actually seen do the purse snatching . . . ." He also moved to suppress the petitioner's statement to police based on the theory that "when you hold somebody for investigation for the specific purpose of securing evidence, then of course, it's the product of an illegal detention." Regarding the surveillance video, counsel said that the petitioner did not appear on the tape. However, he did not show the tape to the jury because he believed the tape was "circumstantial evidence" that would "insult[] the jury's intelligence." Counsel testified that he did not recall why he did not cross-examine the victim, although he said that "he must have had a reason. Maybe she didn't say anything against [the petitioner]."

On cross-examination, counsel said that the victim in the case that went to trial was a seventy-eight-year-old woman, and that he probably did not cross-examine her because she was a sympathetic witness. Upon questioning by the court, counsel said that he did move the trial court for a facilitation jury instruction but that the instruction was refused. Counsel reiterated that he "contested every issue that I thought could be contested . . . which was mainly the statement, which I did file a motion to suppress." Regarding the petitioner's guilty pleas, counsel testified that the

concurrent sentences offered as part of the plea agreement were in the petitioner's best interest, but had the petitioner insisted on going to trial for those offenses, he would have followed his client's wishes.

At the conclusion of the hearing, the post-conviction court denied both petitions. The petitioner filed a timely appeal, limiting his appeal to those issues regarding the entry of his guilty pleas.

## ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-372, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Furthermore, in the context of an allegation that ineffective assistance rendered a guilty plea involuntary, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would have not pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697.

4

On appeal, the petitioner argues that counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary. We disagree. At the evidentiary hearing, both counsel and the petitioner testified that counsel did not pressure the petitioner into pleading guilty, and both men also said that the petitioner's pleading guilty, in which the petitioner would avoid the possibility of consecutive sentences, was in his best interest. Furthermore, while the petitioner argued that counsel's allegedly deficient representation during his earlier jury trial left him with no other option but to plead guilty, the post-conviction court did not find that counsel rendered ineffective assistance at trial and the petitioner chose not to appeal that finding. Therefore, the petitioner cannot establish that his guilty pleas are the result of ineffective assistance of counsel flowing from the trial of the related cases. Accordingly, we deny the petitioner relief.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE

5